1
2
3
4
5

GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY (#134180)
PETER A. BINKOW (#173848)
MICHAEL GOLDBERG (#188669)
ROBERT V. PRONGAY (#270796)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
Email: info@glancylaw.com

6
7

*Lead Counsel for Lead Plaintiff and the Class*

8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12

IN RE RENTECH, INC.
SECURITIES LITIGATION

Lead Case No. 2:09-cv-09495-GHK
(PJWx)

13
14

Hon. George H. King

15
16
17
18
19
20
21

**LEAD PLAINTIFF'S
MEMORANDUM IN FURTHER
SUPPORT OF FINAL
APPROVAL OF THE PROPOSED
SETTLEMENT, CLASS
CERTIFICATION AND THE
PLAN OF ALLOCATION, AND
AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT
OF EXPENSES**

22
23
24
25

Date:   September 26, 2011
Time:  9:30 A.M.
Place:  Courtroom 650

26
27
28

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE
PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................1

II.  INTRODUCTION ................................................................................1

III. THE OBJECTION TO THE SETTLEMENT SHOULD
     BE OVERRULED ................................................................................4

     A.   Langsdorf Appears to Lack Standing to Object to the Settlement ......5

     B.   Plaintiff's Lead Counsel's Request for Attorneys' Fees
          Is Reasonable ................................................................................6

     C.   Langsdorf's Requests for Information Are All Immaterial to the
          Settlement of the Litigation ................................................................9

          1.   Langsdorf's Request that the "Beliefs" of Rentech's Insurance
               Company Should Have Been Included in the Notice ...............9

          2.   Langsdorf's Request for Justification Regarding the Definition
               of the Class and Why No "Holder" Claims Are Included in the
               Settlement Is Irrelevant and Immaterial ................................10

IV.  CERTAIN OF THE OPT-OUTS SHOULD BE REJECTED ....................11

V.   THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
     ALLOCATION, AND THE REQUESTED ATTORNEYS' FEES AND
     EXPENSES ARE FAIR AND REASONABLE .........................................13

     A.   The Reaction of Members of the Class Confirm that the
          Settlement, Class Certification, and the Plan of Allocation
          Are Reasonable and Fair ................................................................14

     B.   The Reaction of Members of the Class Confirm that the Award of
          Attorneys' Fees and Expenses Are Reasonable and Fair .................15

VI.  CONCLUSION ................................................................................16

TABLE OF AUTHORITIES

**Cases**

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ...................................................................................11

*Braud v. Transport Serv. Co. of Ill.*,
    No. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) .........................5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ........................................................................5

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ........................................................................14

*Feder v. Elec. Data Sys. Corp.*,
    248 F. App'x 579 (5th Cir. 2007) .................................................................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)..............................................................14, 15

*In re Heritage Bond Litig.*,
    No. 02-ML-1475-DT(RCX),
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ...........................................15

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .........14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .....................................................................15

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) .................15

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997).............................................................15

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE
PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

*In re The Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ...........................................................14, 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994).........................................................................7

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998).....................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .....................................................................................5

*Morrison v. Nat'l Australia Bank Ltd.*,
    130 S. Ct. 2869 (2010) ...............................................................................10

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................14

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000).......................................................................7

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
    59 F. Supp. 2d 1021 (N.D. Cal. 1999) ..........................................................5

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977).........................................................................7

**Regulations**

15 U.S.C. §78u-4(a)(7) ........................................................................................9
Fed. R. Civ. P. 23(e)(5)........................................................................................5
Fed. R. Civ. P. 23(c)(2) ........................................................................................9

**Other Authorities**

4 Newberg on Class Actions, §13:69 (4th ed. 2002) ..........................................5

iii

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE
PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## I.   PRELIMINARY STATEMENT

Lead Plaintiff Eugene Baccardo ("Lead Plaintiff" or "Plaintiff") respectfully submits this reply memorandum in further support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation (D.E. No. 41), and Lead Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.  D.E. No. 43.

## II.   INTRODUCTION

After extensive litigation and arm's-length settlement negotiations, Lead Plaintiff has reached a settlement with Defendants providing for the payment of $1,800,000, which is 10.8% of the possible maximum damages, for the benefit of the Class.[1]  As set forth in the previously filed Lead Plaintiff's Memorandum in Support of Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation[2] (the "Final Approval Memorandum"), and the accompanying Declaration of Peter A. Binkow[3] (the "Binkow Decl."), Lead Plaintiff and his counsel have achieved a settlement that is a highly favorable result for the Class and clearly fair, reasonable, and adequate.

The requested award of attorneys' fees and expenses is also reasonable in light of the highly favorable results achieved, the extensive efforts of Plaintiff's Lead Counsel, and the significant risks in bringing and prosecuting this Litigation. As demonstrated in the previously filed Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for an Award of Attorneys' Fees and

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation of Settlement dated March 17, 2011 (D.E. No. 35, Ex. 1), as amended by the Amendment to Stipulation of Settlement dated May 16, 2011.  (together, the "Stipulation").  D.E. No. 37, Ex. 1.

[2] The Final Approval Memorandum was previously submitted to the Court on August 22, 2011.  D.E. No. 42.

[3] The Binkow Decl. was previously submitted to the Court on August 22, 2011. D.E. No. 45.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE
PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Reimbursement of Expenses[4] (the "Fee Memorandum"), the requested fee is the "benchmark" fee in the Ninth Circuit and is fair and reasonable when considered under the applicable standards.  Upon moving for final approval, Plaintiff's Lead Counsel devoted more than 775 attorney and staff hours to this Litigation with a resulting lodestar of $366,358.00.  The request fee of 25% of the Settlement Fund, or $450,000, represents a lodestar multiplier of only 1.23.  As compared to cases in this Circuit, this lodestar multiplier further evidences that Plaintiff's Lead Counsel's fee request is more than reasonable, particularly in light of the complexity of the case.

As detailed in the Final Approval Memorandum, the Binkow Decl., and the Affidavit of Jose C. Fraga Regarding (A) Mailing of the Notice and Proof of Claim and (B) Publication of the Summary Notice[5] ("Fraga Aff."), Lead Plaintiff prepared a detailed Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing[6] (the "Notice"), in accordance with the Court's May 26, 2011 Order Preliminarily Approving Settlement and Providing for Notice of the Proposed Settlement[7] (the "Notice Order").  The Notice Order and the Notice provided that Settlement Class Members that did not wish to participate in the Settlement, but wished to retain any causes of action against Defendants, could exclude themselves from the Settlement by opting out in accordance with procedures established in the Notice. The Order also provided that Settlement Class Members could remain in the Settlement Class, appear and show cause, if they had any reason as to why: (1) the

---

[4] The Fee Memorandum was previously submitted to the Court on August 22, 2011. D.E. No. 44.

[5] The Fraga Aff. was previously submitted to the Court on August 2, 2011. D.E. No. 39.

[6] The Notice sent to Settlement Class Members was previously filed with the Court as Exhibit A to the Fraga Aff.  D.E. No. 39, Ex. A.

[7] D.E. No. 38.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

proposed Settlement should or should not be approved as fair, reasonable, and adequate; (2) a judgment should or should not be entered thereon; (3) the Plan of Allocation should or should not be approved as fair; and (4) attorneys' fees and expenses should or should not be awarded to Plaintiff's Lead Counsel.   The Notice Order and the Notice clearly articulated that for Settlement Class Members to be able to appear and object to the Settlement, they were required to send written notice of their objection to both the Court and to specified representatives for the Lead Plaintiff and Defendants.   Class Members' requests for exclusion or objections to any part of the Settlement were to be postmarked on or before September 6, 2011.  Notice at 2, 5-7.

The Settlement Class's response to the Settlement, Class Certification, the Plan of Allocation and counsel's request for fees and expenses has been overwhelmingly positive.   Following the extensive notice program, only one purported Class Member objected to any part of the Settlement or counsel's request for an award of attorneys' fees.   *See* Supplemental Affidavit of Jose C. Fraga Regarding (A) Report on Requests for Exclusion and (B) Report on Objections Received[8] ("Fraga Supp. Aff."), ¶ 4.  The paucity of objections after an extensive notice program is strong evidence that the Settlement, Plan of Allocation and counsel's request for an award of attorney's fees are fair and reasonable.   Moreover, as discussed below and based on the entire record herein, the lone stray objection appears to lack standing, is unfounded and should be overruled.

Additionally, the Claims Administrator has only received eight requests for

---

[8] Attached as Exhibit 1 to the Declaration of Peter A. Binkow in Further Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation, and Lead Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Binkow Supp. Decl."), filed concurrently herewith.

exclusion from the Settlement.  *Id.* at ¶ 3.  As discussed below, of these eight requests, only four are valid.  The Court should deny the four invalid requests for exclusion because the purported Class Members have failed to demonstrate that they are Class Members even after being informed of the deficiencies in their requests for exclusion by Plaintiff's Lead Counsel.

## III.   THE OBJECTION TO THE SETTLEMENT SHOULD BE OVERRULED

Attorney Michael G. Langsdorf ("Langsdorf") is the only purported Class Member who has lodged an objection to the $1,800,000 recovery for the benefit of the Class.  The lone objection to the Settlement and proposed fee award (the "Objection") was mailed to the Court, Plaintiff's Lead Counsel, and the Claims Administrator on August 31, 2011.[9]

Langsdorf's objection is bereft of any meaningful analysis of the facts and circumstances of this Litigation or an understanding of securities and class action laws.  Nevertheless, Langsdorf objects to the request for an award of attorneys' fees, and raises various issues with the settlement.[10]  These issues include, *inter alia*: (1) "why the lawyers should receive 40% of all funds paid by Rentech, and/or their insurance instead of just 40% of funds awarded to individuals [that initially brought the suit that formed the class approved by the court] as a percentage of the whole class"; (2) "if there was established error by" Rentech, why should payment only be to those individuals and/or entities that bought stock during the Class Period; (3) why are there not any "holder" claims for people who

---

[9] Michael G. Langdorf's Objection is attached as Exhibit C to the Fraga Supp. Aff.
[10] Although Plaintiff's Lead Counsel has reached out to Langsdorf by telephone and email, he has failed to respond yet.  Additionally, Plaintiff's Lead Counsel addressed all of Langsdorf's concerns by letter dated September 12, 2011, which is attached to the Binkow Supp. Decl. as Exhibit 2.  Langsdorf has failed to respond to that letter as well.

held shares prior to the Class Period; and (4) "[w]hy does th[e] notice not show that Rentech's Insurance Company is the party agreeing to pay the great majority of the claim instead of Rentech since it is the Insurance Company's belief that it is cheaper to settle the case instead of a length litigation."

## A.   Langsdorf Appears to Lack Standing to Object to the Settlement

As a preliminary matter, it appears that Langsdorf lacks standing to object to the Settlement.  It is well-settled that only class members can make objections on behalf of a class.  Fed. R. Civ. P. 23(e)(5) ("any *class member* may object" to a settlement of a class action) (emphasis added).  A non-class member does not have an affected interest in the class plaintiff's claims so as to be able to assert an objection on their behalf.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("non class members have no standing to object"); 4 Newberg on Class Actions, §13:69 (4th ed. 2002.).  Moreover, it is a claimant's burden to demonstrate that they have standing. *Braud v. Transport Serv. Co. of Ill.*, No. 05-1898, 2010 WL 3283398, at *2 (E.D. La. Aug. 17, 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579, 581 (5th Cir. 2007) (class members bear the burden to show standing to object).  Additionally, the Notice sent out to all potential Class Members stated that objectors must include the number of shares of Rentech common stock purchased and/or acquired during the Class Period.  *See* Fraga Aff., Ex. 1, at 6.

However, in spite of this, Langsdorf has failed to demonstrate that he purchased shares during the Class Period and is thus a Class Member.[11]  His objection only states that:

---

[11] *See* Fraga Supp. Aff., Ex. C.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

[d]uring the past six years I have owned in my own name, stocks in Rentech; RTK stock owned by the community of my wife and I, owned stock in a pension and profit sharing plan (trustee), RTK stock in my IRA, RTK stock owned by my Washington State law firm, Michael G Langsdorf (a professional corporation), stock in joint accounts with my son Jason Unzelman Langsdorf, and RTK stock with my daughter Jennifer Langsdorf Royer totaling over 2,300,000 shares and closer to 2,800,000 during portions of the last six years.

In fact, Langsdorf fails to list the actual dates of any of his purchases of Rentech stock, let alone those that occurred during the Class Period. Thus, without proof of Class membership, Langsdorf has no cognizable interest in the instant litigation and no standing to bring an objection before the Court.[12] Therefore, his rights will not be affected by the Settlement.[13]

**B.    Plaintiff's Lead Counsel's Request for Attorneys' Fees Is Reasonable**

Langsdorf's stated objection is to the "payment of 40% contingency fee to the law firm of Glancy, Binkow & Goldberg, L.L.P., in this case in excess of the 40% payable to those parties" that initiated the Litigation.

In this case, Lead Plaintiff has only requested an award of 25% of fees. Moreover, it appears that Langsdorf is implying that this action should be treated as an individual action and not a class action from his request that Plaintiff's Lead

---

[12] Langsdorf was informed by Plaintiff's Lead Counsel that he needed to set forth information demonstrating that he is a Class Member and that if he did so, he was welcome to participate in the settlement process. However, Plaintiff's Lead Counsel also informed Langsdorf that if he failed to remedy this deficiency, Plaintiff's Lead Counsel would request that the Court strike his objection and deny his request to speak at the Settlement Hearing. Binkow Supp. Decl., Ex. 2.

[13] Moreover, it appears from the substance of his objection, particularly the inquiries regarding the "holder" claims and the justifications for the choice of Class Period, that Langsdorf might not have purchased shares during the Class Period and thus lacks standing to object. *See* Fraga Supp. Aff., Ex. C.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Counsel should only receive fees out of the "initial" plaintiff's recovery from the Settlement. This argument ignores the Common Fund Doctrine that has long recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."[14] *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("The purpose of this 'common fund' doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it."); *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach.") (citation omitted). Additionally, this argument ignores the purpose of the Private Securities Litigation Reform Act (the "PSLRA"), which was enacted by Congress in 1995 to establish a specific set of procedures for the selection of the lead plaintiff in securities class actions. In accordance with the PSLRA, this Court has already appointed Eugene Boccardo as Lead Plaintiff and approved his selection of Glancy Binkow & Goldberg LLP as Lead Counsel (D.E. No. 19), and deemed this action as a class action in the Notice Order.

As discussed more fully in the Fee Memorandum and the Binkow Decl., the requested award of attorneys' fees and expenses from the Settlement Fund are in fact fair and reasonable. The requested award of 25% of the Settlement Fund is reasonable in light of the significant recovery, 10.8% of the maximum estimated damages, that was achieved here in the face of the substantial legal and factual complexity of this case and the significant difficulties of establishing both liability and damages. Fee Memorandum at 10-12. Additionally, this recovery was

---

[14] Indeed, under Langsdorf's theory, there would be no class actions.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

acquired in spite of the substantial risks of the Litigation. *Id.* at 12-13. Moreover, only highly skilled counsel could have successfully represented the Class and obtained such a favorable recovery against a Defendant represented by highly skilled and respected counsel, which further goes to the reasonableness of the fee request. *Id.* at 13-15. The contingent nature of the case and the financial burden carried by Plaintiff's Lead Counsel in prosecuting this action also justify the request for an award of fees. *Id.* at 15-16.

In complex class actions, such as the one at hand, courts in this Circuit routinely award 25%, which has been established as the "benchmark" reward. *Id.* at 9-10. The reasonableness of Plaintiff's Lead Counsel's request for an award of fees is further evidenced by a lodestar cross check. In this case, the fee request represents a multiplier of only 1.23, which is well within the range of frequently awarded multiples in this Circuit. *Id.* at 18-20. Given that the fee request is squarely within the range typically awarded in securities class actions, where the significant financial risks undertaken by counsel operating on a contingency fee basis often merit substantial lodestar adjustment, the requested fee is clearly fair and reasonable. Additionally, the reaction of the Class to the Settlement, as discussed more thoroughly below, evidences that the request for an award of attorneys' fees is reasonable and should be awarded.

Moreover, Plaintiff's Lead Counsel's expenses were all reasonably incurred in the course of the prosecution and were the types of out-of-pocket expenses that an attorney would normally expect the client to pay. *Id.* at 21-22. Because of these reasons and that the requested expenses were relatively small compared to the recovery obtained, the total expenses request is very reasonable and should be reimbursed in full.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE
PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1

2

**C.   Langsdorf's Requests for Information Are All Immaterial to the Settlement of the Litigation**

3

Plaintiff's Lead Counsel has responded in depth to Langsdorf's requests for

4

more information regarding the Settlement.[15]   However, his primary requests are

5

also addressed herein.

6

7

**1.   Langsdorf's Request that the "Beliefs" of Rentech's Insurance Company Should Have Been Included in the Notice.**

8

9

Lansgdorf has requested information regarding why Rentech's insurance

10

company's beliefs about the Settlement were not included in the Notice.   This

11

information was not included in the Notice because Rentech's insurance company

12

is not a party to this Litigation.   Thus, the insurer's possible "beliefs" regarding

13

the settlement are immaterial and irrelevant.   However, the Notice outlines the

14

actual Defendants' justifications for settling this matter.   *See* Notice at 1 & 4.

15

To the extent that Langsdorf implies that the Notice is somehow defective,

16

he is mistaken.   The Notice satisfies all of the requirements of Federal Rule of

17

Civil Procedure 23(c)(2) and the PSLRA (15 U.S.C. §78u-4(a)(7)).   The Notice

18

describes the nature of the Litigation; sets forth the definition of the Class; states

19

the Class's claims; discloses the right of Class Members to exclude themselves

20

from the Class, as well as the deadline and procedure for doing so and warns of

21

the binding effect of the settlement approval proceedings on Class Members who

22

do not exclude themselves.   In addition, the Notice describes the settlement and

23

the portion that the Lead Plaintiff proposes to distribute to the Class, both in the

24

aggregate and on an average per-share basis; explains the proposed Plan of

25

Allocation; states the parties' disagreement over liability and other issues; sets out

26

the amount of attorneys' fees and expenses that Lead Counsel intends to seek in

27

28

[15] *See* Plaintiff's Lead Counsel's letter to Langsdorf dated September 12, 2011, which is attached to the Binkow Supp. Decl. as Exhibit 2.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis; provides contact information for the counsel of the parties and the Court; and summarizes the reasons the parties are proposing the Settlement.  The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement, the Plan of Allocation, or counsel's request for attorneys' fees and expenses and appearing at the hearing.  Thus, the contents of the Notice satisfy all applicable requirements.

### 2. Langsdorf's Request for Justification Regarding the Definition of the Class and Why No "Holder" Claims Are Included in the Settlement Is Irrelevant and Immaterial

Langsdorf has requested information on how the definition of the Class was formed, why the Settlement only makes payment to those individuals or entities that purchased Rentech shares during the Class Period, and why the Settlement does not provide for payment to the holders of Rentech shares during the Class Period, *i.e.* those who purchased shares prior to the start of the Class Period.

In this case, Lead Plaintiff brought claims under Sections 10 and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), which regulates conduct in connection with the purchase or sale of securities.  *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2884 (2010) ("Section 10(b) does not punish deceptive conduct, but only deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities'. . . .'[P]urchase-and-sale transactions are the objects of the statute's solicitude.'").  Lead Plaintiff's contention is that Rentech misrepresented its financial condition, which inflated the value of its shares, and upon the disclosure of these misrepresentations, the Company's true share value was revealed.  Thus, Lead Plaintiff started the Class Period with the first alleged misrepresentation by Rentech regarding the

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE
PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Company's financial position and made the end of the Class Period the alleged disclosure of the Company that brought to the public's attention that Rentech's previous statements were misstated.

Moreover, claims under Section 10 the Exchange Act require that purchasers relied on the company's alleged misstatements. Thus, there can be no "holder" claims under the securities claims, just purchaser/seller claims. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733, 749 (1975) (holding that Rule 10b-5 does not permit holder's actions).

Under Lead Plaintiff's allegations and theory of the case, May 9, 2008 was the first misstatement made by the Company. Thus, purchasers of Rentech stock prior to that day could not possible rely on these misstatements as required under the Section 10 claim and Rentech's stock price could not have been inflated. Likewise, Lead Plaintiff alleges that on December 14, 2009, the truth about Rentech's financial condition was revealed. Therefore, purchasers of the Company's shares after this date could not have relied on these misrepresentations in purchasing Rentech stock and the stock was no longer inflated at this time.

Finally, the resolution of this lawsuit will only affect the rights of Class Members. In no way does the Settlement release or affect the claims of others who purchased shares either before or after the Class Period.

## IV.   CERTAIN OF THE OPT-OUTS SHOULD BE REJECTED

Lead Plaintiff's Counsel received eight requests for exclusion. Of these eight requests, the requests of Jesse Benjamin Nicholson, Mike Harvanko, and Jeanine Harvanko were facially valid and those Class Members should be excluded. Fraga Supp. Aff., Exs. B-3, B-5, B-6. The other five requests are invalid due to deficiencies related to the lack of certain necessary information,[16]

---

[16] Notice at 5. ("To exclude yourself from the Class, you must send a letter by mail stating that you want to be excluded from *In re Rentech, Inc. Securities Litigation*, Lead No. 2:09-cv-09495-GHK (PJWx). You must include your name,

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

including the number and dates of shares purchased during the Class Period. These invalid requests for exclusion were sent by Elke Bergman, Renji George, Charlene Pierce, Bert Rhynearson, and Kenneth Kozicki. *See id.* at Exs. B-1, B-2, B-4, B-7, B-8. Lead Counsel sent follow up letters to all of these individuals, except Kenneth Kozicki, whom Lead Counsel attempted to reach by telephone due to time constraints. Binkow Supp. Decl., Exs. 4, 5, 7, 8 & ¶ 11. These letters explained that there were deficiencies in their requests and how to remedy them. Only Elke Bergman responded with the appropriate information, making her request for exclusion valid. *See* Binkow Supp. Decl., Ex. 6.

Lead Counsel and the Claims Administrator received no further correspondence from Renji George or Charlene Pierce. Bert Rhynearson sent additional information to Lead Counsel, which did not remedy the initial deficiencies. Binkow Supp. Decl., Ex. 4. Lead Counsel subsequently spoke to Mr. Rhynearson by telephone. During the conversation, Mr. Rhynearson reiterated his intent to exclude himself from the Class, however he admitted that he was unable to demonstrate on what dates he purchased Rentech shares. Binkow Supp. Decl., ¶ 6. Additionally, Lead Counsel called Mr. Kozicki and left a message informing him that his request was deficient, how he could remedy it, and how he could reach Lead Counsel. Binkow Supp. Decl., ¶ 11. However, at this time, Lead Counsel has yet to hear from him. *Id.*

Since Renji George, Charlene Pierce, Bert Rhynearson, and Kenneth Kozicki are unwilling or unable to provide the necessary information needed to determine if they are Class Members, the Court should not accept their requests for exclusion. The requirement that requests for exclusion provide share purchase

---

address, telephone number, your signature, and the number of shares of Rentech common stock you purchased or acquired between May 9, 2008, and December 14, 2009, inclusive, the number of shares sold during this time period, if any, and the dates of such purchases and/or sales.").

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

information is a valid and negotiated part of the settlement approval process in that Defendants need to know that they are resolving substantially all or an adequate percentage of their potential liability.

## V.   THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION, AND THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE FAIR AND REASONABLE

As discussed at length in the Final Approval Memorandum and the Binkow Decl., a number of factors weigh strongly in favor of approval of the Settlement and the requested award of attorneys' fees and expenses.

Based on Plaintiff's expert's estimates, the Settlement represents a recovery of approximately 10.8% of the Class's maximum recuperable damages, which is well within the spectrum of Settlement amounts commonly approved within the Ninth Circuit and nationwide.  Final Approval Memorandum at 10-12.  Moreover, Lead Plaintiff would face considerable legal obstacles over the course of continuing this Litigation.   Specifically, there would be substantial challenges proving scienter (*i.e.*, fraudulent intent), establishing loss causation, overcoming Defendants' motion to dismiss, certifying the class, and countering Defendants' likely summary judgment attacks.  *Id.* at 6-10, 12-14.   Additionally, if Lead Plaintiff was able to overcome all of these challenges, there would still be a complex trial, which would involve a "battle of experts," and likely appeals.  *Id.* At the point of settlement, Lead Plaintiff was in an excellent position to evaluate the strengths and weaknesses of his allegations against Defendants, and the defenses raised thereto, as well as the substantial risks of continued litigation, because of, among other things, the extensive factual and legal research performed.  *Id.* at 14-15.  Moreover, Plaintiff's Lead Counsel, a well respected firm that is highly experienced in securities class actions, concurs that the Settlement, which was negotiated in good faith and at arm's-length, is fair reasonable and adequate.  *Id.* at 15-16.

13

**A.    The Reaction of Members of the Class Confirm that the Settlement, Class Certification, and the Plan of Allocation Are Reasonable and Fair**

In this Circuit, the reaction of class members to a proposed settlement is one of the factors taken into consideration in the analysis of whether a settlement is fair, reasonable, and adequate. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Here, there has been only one purported objection[17] to any aspect of the Settlement. This clearly establishes that the proposed Settlement is fundamentally fair, reasonable, and adequate. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citing cases); *In re Heritage Bond Litig.*, 02-ML-1475 DT, 2005 WL 1594403, at *10 (C.D. Cal. June 10, 2005) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (approving settlement where 18 objections were filed after notice was sent to 27,883 class members); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257-58, 261-62 (E.D. Va. 2009) (lack of objections to settlement gave court "a great deal of confidence" in adequacy of settlement).

Additionally, as discussed above, the Claims Administrator only received eight requests for exclusion of which only four are currently valid. This too evidences that the proposed Settlement is fundamentally fair, reasonable, and adequate. *Hanlon,* 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *see also In re Mego Fin.*

---

[17] As discussed above, the Objection lacks standing and is meritless.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

*Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (minimal number of objections and requests for exclusion "militates in favor of approving the settlement as fair, adequate, and reasonable").

## B.    The Reaction of Members of the Class Confirm that the Award of Attorneys' Fees and Expenses Are Reasonable and Fair

Similarly, lack of meaningful objections to the request for an award of attorneys' fees and expenses evidences overwhelming support for the effort and results achieved by counsel, and supports a finding that the requested fees and expenses are reasonable under the circumstances of this Litigation. *In re Heritage Bond Litig.*, Nos. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005) (holding that one objector to a settlement in which notice was disseminated to over 6,000 potential class members, "is remarkably small given the wide dissemination of notice [and] [a]ccordingly, the Court concludes that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund."); *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997) (in "determining the reasonableness of a requested fee, numerous courts have recognized that 'the lack of objection[s] from members of the class is one of the most important reasons'," considered in approving a fee request) (citation omitted); *Mills Corp.*, 265 F.R.D. at 261 (only two objections to fee and expense application from 128,000 potential class members "[f]urther indicate[d] the Class'[s] approval of the result realized by this Settlement").    Since Plaintiff's Lead Counsel efficiently and effectively prosecuted this Litigation, resulting in a significant recovery – 10.8% of the maximum recoverable damages – for the Class, the requested fees and expenses are fair and reasonable and should be approved.

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE
PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## VI.   CONCLUSION

Whereas both the Settlement and the Plan of Allocation are fair, reasonable, and adequate, Lead Plaintiff respectfully requests that each be approved by this Court.  Since certification of the Settlement Class is also appropriate, Lead Plaintiff also respectfully requests the Court certify the Settlement Class.  Additionally, Lead Plaintiff respectfully requests that the Court approve the fee and expense application, awarding Lead Counsel 25% of the Settlement Fund plus reimbursement of $20,598.16 for expenses, plus interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid in full. Finally, Lead Plaintiff further requests that the Court overrule the Objection to the Settlement, and deem Renji George, Charlene Pierce, Bert Rhynearson, and Kenneth Kozicki's requests for exclusion as invalid.

Thus, Lead Plaintiff respectfully requests that the Court enter the Final Judgment and Order of Dismissal with Prejudice, which has Elke Bergman, Jeanine Harvanko, Mike Harvanko, and Jesse Benjamin Nicholson included as individuals excluded from the Settlement Class in Exhibit 1.

DATED: September 16, 2011          GLANCY BINKOW & GOLDBERG LLP

By:  *s/Peter A. Binkow*
          Peter A. Binkow
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
Email:  info@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Class*

LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On September 16, 2011, I caused to be served the following documents:

1. **LEAD PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

2. **DECLARATION OF PETER A. BINKOW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

3. **[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

By posting the document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the parties on the attached Court's ECF Service List.

And on the following parties:

Michael G. Langsdorf
2712 Washington Street
Vancouver, WA 98660

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 16, 2011, at Los Angeles, California.

*s/ Peter A. Binkow*
Peter A. Binkow

## Mailing Information for a Case 2:09-cv-09495-GHK-PJW

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter A Binkow**
  pbinkow@glancylaw.com

- **Melanie Marilyn Blunschi**
  melanie.blunschi@lw.com,svdocket@lw.com,jennifer.duckworth@lw.com

- **Timothy J Burke**
  service@ssbla.com

- **Donald J Enright**
  denright@finkelsteinthompson.com

- **Patrick E Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,Zoila.Aurora@LW.com,jacqueline.haggarty@lw.com,david.hazlehurst@lw.com

- **Michael Marc Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,asohrn@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com,lglancy@glancylaw.com

- **Mark L Punzalan**
  mpunzalan@finkelsteinthompson.com,etripodi@finkelsteinthompson.com,arivas@finkelsteinthompson.com,denright@finkelsteinthompson.com,ttien@finkelsteinthompson.com,jdito@

- **Rosemary M Rivas**
  rrivas@finkelsteinthompson.com,srenwick@finkelsteinthompson.com,mpunzalan@finkelsteinthompson.com,arivas@finkelsteinthompson.com,jdito@finkelsteinthompson.com

- **Elizabeth K Tripodi**
  etripodi@finkelsteinthompson.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)